IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| JEFF BURKS, ET AL. | § | |
| v. | § | CIVIL ACTION NO. 6:13cv746 |
| SHERIFF JEFF PRICE, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiffs Jeff and Melynda Burks filed this lawsuit under 42 U.S.C. §1983 complaining of alleged deprivations of their constitutional rights. As Defendants, the Plaintiffs name Sheriff Jeff Price of Rusk County, City of Henderson Municipal Court Judge Rickey Turner, Henderson City Attorney David Brown, and Mayor Pat Brack, in their individual and official capacities. The claims against these Defendants in their individual capacities were previously dismissed, leaving only the official-capacity claims.

## I. The Plaintiffs' Claims

In their amended complaint, Plaintiffs state that Jeff Burks was driving when he was stopped by a Texas Department of Public Safety officer named Jesse Stewart for an alleged moving violation. Officer Stewart discovered that there were outstanding Class C misdemeanor arrest warrants for Mr. Burks out of the municipal court in Henderson as well as other justice of the peace courts. Stewart placed Mr. Burks under arrest. Melynda Burks was called to the scene to drive Jeff's car home so that it would not be impounded. Stewart demanded identification from Mrs. Burks without any suspicion of a violation of law.

Stewart then ran Mrs. Burks' name and discovered that she also had outstanding Class C misdemeanor arrest warrants from the municipal court in Henderson. She was placed under arrest, and she and Mr. Burks were taken to the Rusk County Jail, where they were booked in on the Class

C misdemeanor arrest warrants. They contend that at no time has there been a hearing to determine their ability to pay the fines or bonds associated with the charges against them.

The Plaintiffs allege that they are indigent, with five young children. Mr. Burks is and has been unemployed, but missed a job interview solely because of his arrest in this case. They were able to raise the funds for Mrs. Burks and she was released from jail after paying a partial payment on fines and being bonded out on other Class C misdemeanor warrants from the justice of the peace court. At the time of the amended complaint, Mr. Burks has been released from jail on bond, pending appeal of the denial of his habeas corpus petition.

On September 5, 2013, Plaintiffs' counsel notified Judge Turner and Sheriff Price that Mr. Burks was being held in violation of his constitutional rights, but Turner refused to order his release. City Attorney Brown also was notified and refused to recommend that Mr. Burks be released. Plaintiffs state that on information and belief, Brown is actively involved in procuring the prosecution of the arrest warrants from the municipal court in Henderson.

Similarly, the Plaintiffs allege that on information and belief, Mayor Brack is aware of the practices of Turner and Brown in issuing arrest warrants from the municipal court in Henderson, and condones this practice as a way of securing additional revenue for the City of Henderson. Brack was notified of the situation with Jeff Burks by counsel, but has taken no action to cure the illegal conduct.

For their causes of action, the Plaintiffs state that the Defendants engaged in a course of conduct resulting in the violation of their rights to due process and equal protection, as well as their right to be free from malicious prosecution. They contend that the Defendants acted with deliberate indifference to their right to not be arrested or jailed for a non-jailable or non-incarcerable offense, their right to have reasonable bail set, and their right not to be held on a Class C misdemeanor conviction without a determination of their ability to pay the associated fines.

The Plaintiffs go on to assert that the Defendants and their agents acted pursuant to the customs, policies, and regulations of the City of Henderson and Rusk County Sheriff's Department,

and that they failed to properly train and supervise the staff at the Rusk County Jail. They claim that proper training and supervision would have prevented the continued wrongful detention of the Plaintiffs.

The Plaintiffs also maintain that the Defendants refused to hold an indigency hearing and release Plaintiffs when they were demonstrably unable to post bail or pay the Class C misdemeanor fines. This refusal represents an official policy pursuant to the custom, usage, and practice of the City of Henderson and the Rusk County Jail. The Plaintiffs ask that this policy be permanently enjoined.

Plaintiffs argue that Sheriff Price knows or should know that a person cannot be held in jail solely for failure to pay a fine for a Class C misdemeanor when that person cannot pay the fine and secure his freedom. Price therefore knows or should know that it is a violation of due process for a person to be arrested and jailed, pending trial, on a Class C misdemeanor. Price's refusal to release Plaintiffs amounts to false imprisonment. Counsel tried to speak to Price about Mr. Burks's imprisonment, but Price refused to return the phone call.

Plaintiffs assert that as a direct and proximate cause of the Defendants' failure to properly develop and implement a policy of adequate training and supervision, they were deprived of certain constitutional rights, privileges and immunities. They state that if properly trained and supervised, every person employed by the Rusk County Jail and the City of Henderson would have known that the Defendants' conduct was illegal.

The Plaintiffs seek compensatory and punitive damages, as well as reasonable attorney's fees. They also seek a declaratory judgment under the Texas Declaratory Judgments Act that the Defendants' practices of arresting persons for Class C misdemeanor offenses and holding persons in jail for their inability to pay the fines associated with Class C misdemeanors violate the Fourteenth Amendment. They assert that persons cannot be incarcerated just because they are indigent and that it is illegal and unconscionable for the City to convert fine only charges to jail time solely because persons are unable to pay the exorbitant fines imposed by the City.

**II. The Pending Motions for Summary Judgment**

The defendants Price, Turner, Brown, and Brack have filed motions for summary judgment in their individual capacities. These motions were granted on May 1, 2015. This Order addresses the motions filed by these Defendants in their official capacities.

A. Turner, Brown, and Brack's motion for summary judgment (Official Capacity)

In this motion, these Defendants state that because they are sued in their official capacities, the claims against them are in effect against the City of Henderson, and they refer to themselves collectively as the "City of Henderson."

1. The Evidence

a. Melynda Burks' Deposition

In her deposition, Mrs. Burks states that she was arrested on September 3, 2013, on seven outstanding warrants from the City of Henderson Municipal Court and one warrant from the Justice of the Peace Court of Rusk County, Precinct 2. She was also charged with driving with an invalid licence. One of the warrants from the municipal court was a capias pro fine warrant based on a traffic citation on August 3, 2007, for an expired motor vehicle inspection. Mrs. Burks pleaded no contest to the charge and entered into a payment plan with the municipal court, but made no payments.

The other six warrants related to traffic offenses including no driver's license (October 12, 2010), expired motor vehicle inspection, failing to maintain financial responsibility, and no driver's license (October 25, 2011), and no driver's license and failing to maintain financial responsibility (December 20, 2011). The warrant from the justice of the peace court was for no driver's license.

After Mrs. Burks' arrest, she was taken to the Rusk County Sheriff's Office jail. That same day, she was taken to the City of Henderson Municipal Court for a hearing before Judge Turner. This hearing took place in Judge Turner's office; she was read her Miranda rights and told of the warrants existing for her arrest. The fines for the six outstanding traffic offenses totaled $3,156.00

and the capias pro fine warrant amount was $284.00. Mrs. Burks was aware that Judge Turner had already spoken to her attorney, and pleaded "no contest" to all six offenses.

Judge Turner allowed Mrs. Burks to pay $100.00 down on the amount owed and to enter into a payment plan and community service plan for the remainder. The payment plan required payments of $25.00 per month toward one-half of the remaining amount owed, for a total of $1,670.00, and the community service plan required her to perform 134 hours of community service towards the other half owed. Mrs. Burks agreed to both plans and signed the forms. She testified that she was "happy" and believed that she got "a good deal" from Judge Turner. After paying the $100.00, she was taken back to the jail and released on all charges from the City of Henderson; however, she was not released from jail because of the outstanding warrant from the justice of the peace court and the no valid driver's license charge issued by the Department of Public Safety trooper.

Mrs. Burks pleaded guilty to the no valid driver's license charge on September 3, 2013, and paid a fine of $572.00. She also pleaded guilty to the JP warrant, but made no payments toward that bond; the next day, the justice of the peace, Judge Bonnie Miller, allowed her to be released on a personal recognizance bond. She went to the JP court and entered a payment plan and community service plan, but made no payments and performed no community service. Warrants were issued and Mrs. Burks spent six days in jail in October of 2014.[1]

Mrs. Burks stated that she sued Mayor Brack because Brack "employs" the municipal court judge and "it's all in the chain of command." She could not explain why she sued City Attorney David Brown.

---

[1] The Plaintiffs' second amended complaint, filed March 10, 2015, refers to the October 2014 confinement, but Mrs. Burks states in her deposition that this confinement was the result of warrants issued by Judge Miller, who is not a party to this lawsuit. The Plaintiffs do not state how any of the named Defendants were or should be liable for this confinement.

<u>b. Jeff Burks' Deposition</u>

In his deposition, Jeff Burks testified that he was stopped by a Department of Public Safety trooper for speeding on Highway 259. Burks denied that he was speeding, but conceded that his license was invalid. He had 11 outstanding capias pro fine warrants from the City of Henderson Municipal Court and two warrants from the justice of the peace court. The trooper charged Mr. Burks with driving with an invalid license.

Mr. Burks' warrants included a traffic citation on July 8, 2006, for failing to maintain financial responsibility, for which he failed to appear; citations on December 15, 2006, for failing to maintain financial responsibility and displaying expired license plates, for which he failed to appear; and citations on May 9, May 19, and June 21, 2007, for multiple traffic violations.

Mr. Burks was arrested on June 21, 2007 on five outstanding warrants and bonded out of jail the same day. He appeared before the municipal court on June 25, 2007, and pleaded guilty to 11 outstanding offenses. He agreed to perform 265 hours of community service by October 22, 2007, but only completed ten of these hours; however, this form was not completed by any supervisor at the police department, where the community service hours were to be done. Mr. Burks testified that he chose not to complete the community service, he did have time to do it, and his failure to perform the community service hours was not the result of any kind of undue hardship. On December 7, 2007, the eleven capias pro fine warrants were issued for him.

Mr. Burks was brought to jail on September 3, 2014, and was taken to the municipal court the next day. He told Judge Turner that he made an intentional choice not to perform community service, no undue hardship prevented him from doing so, and he could have completed the community service with a good faith effort. Mr. Burks testified that Judge Turner asked for a $700.00 payment or he would have to stay in jail for a week.

Mr. Burks had pending warrants with the justice of the peace court in Precinct 2 and a charge of driving with an invalid license with the justice of the peace court in Precinct 5. He pleaded guilty to the charge of driving with an invalid license and chose to lay out the fine from September 3 to

September 8, 2013, receiving a "two day for one" credit. He also pleaded guilty to the warrants from Precinct 2 and chose to lay out the fines from September 3 to September 8, receiving a two day for one credit. He testified that he sued Mayor Brack because "they held me for ransom" and she was "standing behind the municipal judge," but had no idea why he sued the city attorney.

### c. Judge Turner's Affidavit

In his affidavit, Judge Turner states that he is a quadriplegic from an automobile accident sustained while he was a lieutenant with the City of Henderson Police Department. His position as municipal judge is part-time, primarily working in the mornings, and he has attended municipal judge's school as well as many other schools and courses on the operation of municipal courts.

On the afternoon of September 3, 2013, Judge Turner states that he was home when he received a phone call from Paul Nelson, Mrs. Burks' attorney. Nelson stated that Mrs. Burks had been arrested on several City of Henderson warrants and was being held in jail, and asked that Judge Turner return to the municipal court to set a bond. Nelson stated that Mrs. Burks could not afford to pay the $3,156 in bonds and the $284.00 capias pro fine, that she was crying, and that she had several children at home, one of whom had a doctor's appointment the next day out of town. Judge Turner discussed options with Nelson, who offered to pay $100.00 toward the capias pro fine. Nelson also agreed that the remainder of the fines could be split between a reasonable payment plan and community service hours. He asked if the $100.00 payment could be made by check, and Turner replied that the municipal court does not accept checks, but that he would do so in this case to help out Mrs. Burks.

Judge Turner then went to the municipal court, arriving around 4:00 p.m. Mrs. Burks was brought to court by a City of Henderson police officer. She was grateful to him for meeting with her and pleaded no contest to the unadjudicated offenses. She signed the payment plan and community service plan, and Judge Turner caused a Henderson Municipal Court Jail Commitment and Release Form to be created and stamped with his name, as he has difficulty writing because of his disability. Mrs. Burks was released from custody from all City of Henderson Municipal Court matters. As of

the date of Turner's affidavit, November 4, 2014, some fourteen months later, Mrs. Burks had made one $25.00 payment and reported no community service hours.

Judge Turner held a hearing for Jeff Burks on the morning of September 4, 2013. He learned that Mr. Burks had 11 outstanding capias pro fine warrants, for which the fines and costs totaled $5,283.20. These had all been issued by Judge Seth Stein on December 19, 2007, resulting from Mr. Burks' failure to perform community service on 11 judgments entered against him. Mr. Burks told Judge Turner he was unemployed and Turner assumed he was indigent.

Turner states that in accordance with Tex. Code Crim. Pro. art. 45.046, he asked Mr. Burks several questions about his failure to perform the community service judgments. Mr. Burks replied that he just didn't do it and had no excuse. Mr. Burks stated he did not make a good faith effort to complete the community service and could have done so without undue hardship.

Given these admissions, Judge Turner states that he presented Mr. Burks with two options - he could lay out the fines for $100.00 per day or pay $700.00 down and enter a reasonable payment plan. Mr. Burks replied that he would try to get the $700.00, and Turner told him that until then, he would have to lay out the fines at $100 per day.

Turner states that he caused a jail commitment and release form to be created and stamped with his name, which was then sent to the Rusk County Jail. He acknowledges that this form does not contain a written determination of his findings at the hearing, which he terms an "administrative oversight," but insists that "a full indigency hearing, in accordance with Article 45.046, was held on September 4, 2013."

### d. David Brown's Affidavit

Brown's affidavit states that on September 5, 2013, he received a copy of a letter from Paul Nelson, addressed to Judge Turner, concerning Mr. Burks being held in jail. Brown states that he was not involved in the prosecution of Jeff Burks or Melynda Burks, noting that the warrants for Mr. Burks were capias pro fine warrants, meaning that the prosecution of those matters had already occurred. Brown was not involved in the procurement of the warrants for Jeff Burks or Melynda

Burks and does not procure or issue arrest or pro capias fine warrants in municipal court. He was not involved in setting the amounts of fines or bonds and was not present at the September 3 or September 4 hearings. He is not the policy maker for the City of Henderson and does not perform the functions of the municipal court judge.

### e. Pat Brack's Affidavit

Mayor Brack's affidavit states that she had no knowledge of the arrests of Jeff Burks or Melynda Burks and was not involved in their prosecution, the procurement of the warrants, or setting the amount of fines. She states that she is not the policymaker for the City of Henderson and was not present at the September 3 or September 4 hearings. She is not an attorney and does not perform the functions of the municipal court judge. She has no knowledge of a letter allegedly written by Paul Nelson to Judge Turner.

### 2. Argument

The City of Henderson contends that there was no underlying constitutional violation committed by the individual defendants and that these defendants are entitled to their respective immunities. As a result, because there were no underlying constitutional violations, the City of Henderson cannot be liable as a matter of law.

Next, the City asserts that it has neither power nor authority to set judicial policy or to ratify a municipal judge's judicial conduct. A municipal judge acting in his judicial capacity to enforce state law does not act as a municipal official or lawmaker, meaning that the City cannot be liable for having a "policy" of wrongfully incarcerating indigent defendants because such decisions were made by a municipal judge acting in his judicial capacity. The City denies having a policy, custom or practice of refusing to hold indigency hearings and argues that there is no evidence that inadequate training or supervision was the moving force behind a constitutional violation. Nor was there evidence of deliberate indifference or of a pattern of similar incidents amounting to an official custom or practice of the City.

The City goes on to contend that the Plaintiffs have not stated a claim under the Fifth Amendment because this Amendment applies only to agents of the federal government and that the Plaintiffs' claim for malicious prosecution fails because free-standing claims of malicious prosecution are not viable and the Plaintiffs did not show the violation of explicit constitutional protections arising from an allegedly malicious prosecution. The City further asserts that the Plaintiffs have not stated a claim under the Texas Declaratory Judgments Act and to the extent that the Plaintiffs seek a declaratory judgment under federal law, such a claim is redundant and thus lacks merit.

B. Sheriff Price's Motion for Summary Judgment (Official Capacity)

In his motion for summary judgment, Sheriff Price states that the suit against him in his official capacity is in effect against Rusk County. He sets out the deposition and affidavit evidence and states that because there was no underlying constitutional violation by him, there is no liability on the part of Rusk County. Sheriff Price argues that the county does not have a policy, custom or practice of refusing to hold indigency hearings and states that there is no evidence of inadequate training or supervision which was the moving force behind a constitutional violation.

After discussing the legal basis for municipal liability, Sheriff Price states that Judge Turner issued a commitment order directing the Sheriff's Office to hold Jeff Burks in jail. He maintains that Judge Turner is not a county employee and the county has no power or authority to set judicial policy. Although the Plaintiffs plead a general failure to train and supervise the staff at the Rusk County Jail, Sheriff Price asserts that there are no specific allegations about the alleged inadequate training or supervision.

Sheriff Price goes on to contend that there is no evidence of a custom or practice on the part of Rusk County which resulted in a constitutional violation. He argues that the Plaintiffs have not stated a claim under the Fifth Amendment because this Amendment applies only to agents of the federal government and that the Plaintiffs' claim for malicious prosecution fails because free-

standing claims of malicious prosecution are not viable and the Plaintiffs did not show the violation of explicit constitutional protections arising from an allegedly malicious prosecution.

Although the Plaintiffs raise a false imprisonment claim, Sheriff Price argues that this claim fails because their arrest and incarceration was done pursuant to legal process, including warrants and the judge's commitment order. Furthermore, both of the Plaintiffs pleaded guilty to the charges. Finally, Sheriff Price asserts that the Plaintiffs have not stated a claim under the Texas Declaratory Judgments Act and to the extent that the Plaintiffs seek a declaratory judgment under federal law, this claim is without merit.

### B. The Plaintiffs' Response to the Motions

In their response to the motions for official-capacity summary judgment, the Plaintiffs recount the facts of the case and argue that they were indigent at the time of their arrests. They deny that an indigency hearing was held as required by Texas law, stating that Judge Turner told Jeff Burks if he could not come up with $700, he would stay in jail for a week. Melynda Turner offered to pay $200 as a down payment but Judge Turner refused.

Jeff Burks then sought habeas corpus relief in state court. A hearing was held, at which the State of Texas expressed no opposition to a PR bond and admitted that Jeff Burks was being held only for traffic tickets. The district court denied the habeas petition but granted a PR bond pending appeal, and Mr. Burks was released from jail on September 11, 2003.

On March 7, 2014, the Sixth Judicial District Court in Texarkana granted the application for habeas corpus relief and discharged Mr. Burks and his bond. The Plaintiffs point out that the opinion of the Court of Appeals held that Burks' confinement would not be prohibited if the municipal court were to hold a hearing and sign a written order in compliance with Article 45.046 of the Texas Code of Criminal Procedure.

After stating that Melynda Burks spent six days in the Rusk County Jail before being released after writing to Justice of the Peace Bonnie Miller, the Plaintiffs argue that the Defendants are well aware of the applicable law, which they say prohibits local and state governments from converting

fine-only offenses into jail time without an indigency hearing. They note that under Texas law, the judge at an indigency hearing must make written determinations, which was not done in this case. Thus, the Plaintiffs insist that no indigency hearing was held, or, at the very least, that a genuine issue of material fact exists as to whether or not such a hearing was held.

The Plaintiffs further contend that the fact an indigency hearing under Article 45.046 was never held as to either of them is the central issue in the case. They state that "forcing indigent defendants to lay out fines is a practice employed by Rusk County even though such practices were held unconstitutional by the Supreme Court 44 years ago." The Plaintiffs state that during the habeas corpus proceedings, the State of Texas asked if it were not true that people lay out fines all the time and the district judge stated "Well, you're asking me to overturn an entire legal system. What would happen if I were to jail someone and levy a fine against them?"

After discussing the applicable legal standards, the Plaintiffs reiterate their arguments and point out that when Jeff Burks inquired into a PR bond seven days into his incarceration, Judge Turner responded with a note stating that Burks was now represented by counsel and that he, Turner, could not speak to Burks without his attorney being present; thus, "the deal we were working on for a PR bond is now denied. You must pay the full amount of the fine or lay out in the county jail until 10-24-13." They insist that no indigency hearing was held and that if in fact a "hearing" was conducted, Judge Turner did not comply with the provisions of Tex. Code Crim. Pro. Art. 45.046(a).

C. The Defendants' Replies

In their replies, the Defendants again state that there was no underlying constitutional violation and thus no municipal liability. They assert that the Plaintiffs' conclusory claims are not evidence and contend that rather than presenting evidence, the Plaintiffs simply re-argue whether they have suffered an underlying constitutional violation. The Defendants state that there is no evidence that the City of Henderson has a policy of not holding indigency hearings, that the official policymaker of the City knew of the existence of such a policy, or that this policy was the moving force behind a constitutional violation. They also aver that there was no evidence regarding the

Plaintiff's claims of an alleged policy of not holding indigency hearings, lack of adequate supervision and training, custom or practice, or malicious prosecution. Nor was there any evidence that the City's training and supervision was inadequate, that the City Council was deliberately indifferent for adopting an inadequate training and supervision policy, that any such alleged inadequacies were the moving cause behind a constitutional deprivation, or that the City Council can set policy for the municipal court.

The Defendants argue that the decision of the Sixth Court of Appeals is irrelevant to the current proceeding and that there is no evidence of any constitutional violations by Rusk County. With respect to Melynda Burks' claim of a subsequent arrest, the Defendants state that the Plaintiffs have offered no evidence or arguments to show any of them should be liable for this subsequent arrest and incarceration.

## III. Legal Standards and Analysis

A claim against a municipal official in his official capacity is a claim against the municipality. *Kentucky v. Graham*, 473 U.S. 159, 165-66, 105 S.Ct. 3099, 3105 (1985). In order to prevail in a §1983 claim against a municipality, the plaintiffs must show that the municipality's policy or custom caused the constitutional deprivation. *World Wide Street Preachers' Fellowship v. Town of Columbia*, 591 F.3d 747, 752 (5th Cir. 2009). There is no *respondeat superior* liability in §1983 actions; thus, in order to prevail against a municipality, the plaintiffs must demonstrate that (1) the municipality had a policy or custom, of which (2) a municipal policymaker can be charged with actual or constructive knowledge, and (3) this policy or custom was the moving force behind a constitutional deprivation. *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002).

### A. Policy or Custom

In their Second Amended Complaint (ECF TXED 6:14-cv-746, 57), the Plaintiffs identify the following alleged customs or policies: refusing to hold indigency hearings or release the Plaintiffs when they are demonstrably unable to post bail or pay the fines; failing to train or supervise the staff at the Rusk County Jail; and arresting people for Class C misdemeanors.

The Plaintiffs have offered no evidence showing the existence of a municipal policy or custom of refusing to hold indigency hearings. As this Court previously determined, an indigency hearing was held for Jeff Burks on the morning of September 4, 2013. In any event, any decisions regarding whether or not to hold an indigency hearing would be made by the judge, not by the municipality. The Fifth Circuit has held that a municipal judge acting in his judicial capacity does not act as a municipal official or lawmaker. *Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992). The Plaintiffs have no basis for liability against Rusk County or the City of Henderson for an alleged policy of refusing to hold indigency hearings.

Similarly, the Plaintiffs have failed to demonstrate the existence of a policy of refusing to release the Plaintiffs, or any other persons, who are "demonstrably unable to post bail or pay the fines." In his deposition, Jeff Burks admitted that during the September 4 hearing, he told Judge Turner that he had fulfilled only 10 of the 265 hours of community service which he received, he was not under any type of undue hardship preventing him from performing the rest, it was an intentional choice to not complete the remainder of the hours, and that if he had used a good faith effort, he could have done so. (Deposition of Jeff Burks, pp. 109-112). The Supreme Court explained that the failure to make sufficient bona fide efforts to satisfy the fine and other obligations incurred may reflect an insufficient concern for paying the debt owed to society for the crime, and in such a case, the State is justified in revoking probation and using imprisonment as an appropriate penalty for the offense. *Bearden v. Georgia*, 461 U.S. 660, 668, 103 S.Ct. 2064, 2070 (1983). The Plaintiffs have failed to show the existence of a policy to imprison persons solely because of indigency; furthermore, any such policy of refusing to release incarcerated persons would be made by the judge issuing the commitment order and not the municipality.

A claim against a municipality for failure to train must allege sufficient facts to show that the municipality adopted inadequate training policy procedures, acted with deliberate indifference in doing so, and this inadequate training policy directly caused the plaintiff's injuries. *Sanders-Burns v. City of Plano*, 594 F.3d 366, 381 (5th Cir. 2010). The Plaintiffs argue that "the Defendants failed

to properly train and supervise the staff at the Rusk County Jail. Had Defendants properly trained and supervised the staff at the Rusk County Jail that would have prevented the continued wrongful detention of the Plaintiffs." They go on to assert that "if properly trained and supervised, every person within the employ of the Rusk County Jail and the City of Henderson would have known of the illegality of the Defendants' conduct."

Judge Turner issued a commitment order which formed the basis for Jeff Burks' confinement. The Plaintiffs do not explain what training they believe the Rusk County Jail staff should have received which would have prevented Burks' confinement in the face of this commitment order. The Fifth Circuit has held that a sheriff executing a facially valid court order has absolute quasi-judicial immunity; otherwise, the court said, the sheriff would be required to "act as an appellate court evaluating the legality of a decision issued by a judge trained in the law and authorized to issue such orders." *Mays v. Sudderth*, 97 F.3d 107, 113-14 (5th Cir. 1996). The commitment order was facially valid and the Rusk County Jail staff did not have the duty to evaluate its legality, nor could they have been trained to do so.

The assertion that with proper training, every employee would have known of the illegality of the Defendants' conduct lacks merit because there has been no showing that the Defendants' conduct was illegal. Nor have the Plaintiffs shown an injury resulting from the alleged lack of proper training of the jail staff. This claim is without merit.

Similarly, the Plaintiffs complain of an alleged failure to supervise the jail staff. Such a claim requires a showing of an actual failure to supervise, a causal link between the failure to supervise and a violation of the plaintiff's rights, and that the failure to supervise amounts to deliberate indifference. *Estate of Davis ex rel. McCully v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005). The Plaintiffs have offered no evidence of inadequate supervision of the jail staff other than the implied assertion that with proper supervision, the staff would not have followed the judge's commitment order. This claim is without merit.

The Plaintiffs ask for a declaratory judgment that the Defendants' "practice of arresting persons for Class C misdemeanor offenses constitutes a violation of those persons' Due Process rights under the Fourteenth Amendment to the Constitution of the United States of America." The record shows that Jeff Burks was arrested based on 11 capias pro fine warrants from the City of Henderson municipal court and two warrants from the justice of the peace court. Melynda Burks was arrested on seven warrants from the City of Henderson municipal court and a warrant from the justice of the peace court. The Plaintiffs have not demonstrated that the City of Henderson or Rusk County had a "policy of arresting persons for Class C misdemeanors." Even assuming that a policy exists of arresting persons with multiple outstanding warrants, the Plaintiff has failed to show that such a policy is unconstitutional. Nor have the Plaintiffs alleged, much less shown, that the warrants upon which they were arrested were invalid.

The Plaintiffs have failed to show that Rusk County or the City of Henderson have any policies or customs which were the moving force behind a constitutional deprivation, nor did they show that a constitutional violation in fact occurred. Their claims against the employees of the city and the county - Sheriff Price, Mayor Brack, and City Attorney Brown - in their official capacities are without merit.

Judge Turner was not a municipal official or lawmaker when acting in his judicial capacity. A lawsuit against a municipal judge in his official capacity is in effect against his judicial office and is barred by the doctrine of judicial immunity. *See Barnes v. City of Universal City*, No. 01-50376, 51 F.App'x 482, 2002 WL 31318781 (5th Cir., September 24, 2002) (applying judicial immunity to lawsuit against municipal judge in his official capacity), *citing Mays*, 97 F.3d at 110-11.

A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excessive of his authority. Instead, he will be subject to liability only when he has acted in the clear absence of all jurisdiction. For example, if a probate judge, with jurisdiction over only wills and estates, were to try a criminal case, the judge would be acting in the complete absence of jurisdiction and would not have immunity. But if the judge of a

criminal court were to convict a defendant of a non-existent crime, he would merely be acting in excess of his jurisdiction and would be immune. *Stump v. Sparkman*, 435 U.S. 349, 356-57 and n.7, 98 S.Ct. 1099, 1105 (1978).

There are four factors generally relied upon to determine whether an action is judicial in nature. These are: (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in a courtroom or appropriate adjunct space such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity. *Adams v. McIlhaney*, 764 F.2d 294, 297 (5th Cir. 1985) (finding "no question" that a state court judge had absolute immunity for imprisoning women on grounds of contempt because these were "judicial acts," even if "wholly motivated by personal malice.") Where a court has some subject matter jurisdiction, this is sufficient for immunity purposes. *Id.* at 298.

In this case, Judge Turner held hearings on both Plaintiffs, which took place in his chambers, and issued a commitment order for Jeff Burks. Melynda Burks was released on all charges from the City of Henderson but was held overnight on warrants from the justice of the peace court. These actions by Judge Turner were normal judicial functions taking place in an appropriate adjunct space. The controversies being heard concerned matters properly before the municipal court and arose from a visit to the judge in his official capacity. Judge Turner had subject matter jurisdiction and is therefore entitled to judicial immunity from claims for monetary damages against him in his official capacity.

### B. Malicious Prosecution

To the extent that the Plaintiffs raised a claim of malicious prosecution against the City or the County, this claim fails. The Fifth Circuit has held that a free-standing claim of malicious prosecution is itself not viable, although the initiation of criminal charges without probable cause may set a chain of events in progress which run afoul of explicit constitutional protections. *Castellano v. Fragozo*, 352 F.3d 939, 958 (5th Cir. 2003). Furthermore, the Plaintiffs have not

shown that the criminal proceedings in the municipal court were initiated without probable cause, that they were innocent of the charged offenses, or that the municipal court proceedings terminated in their favor, all of which are necessary pre-requisites to a claim of malicious prosecution even if such a claim were viable. *Cuadra v. Houston Independent School District*, 626 F.3d 808, 813 and n. 6 (5th Cir. 2010). This claim is without merit.

C. False Imprisonment

The Plaintiffs allege that because Sheriff Price refused to release them, he falsely imprisoned them. A claim of false imprisonment requires a showing of detention without legal process. *Wallace v. Kato*, 549 U.S. 384, 389, 127 S.Ct. 1091, 1096 (2007); *Davila v. U.S.*, 713 F.3d 248, 261 (5th Cir. 2013). The Fifth Circuit explained that "therefore, an officer acting with the authority of law does not commit false imprisonment." *Id.*

The Plaintiffs have failed to show that Sheriff Price was acting without authority of law. The sheriff had a commitment order from Judge Turner for Mr. Burks, and Mrs. Burks was held in jail overnight pursuant to warrants issued by the justice of the peace court. The Plaintiffs' claim for false imprisonment against Sheriff Price in his official capacity is without merit.

D. Declaratory Relief

In their second amended complaint, the Plaintiffs seek a declaration under the Texas Declaratory Judgments Act that: (1) the Defendants' practice of arresting persons for Class C misdemeanor offenses violates the Constitution; (2) the practice of holding people in jail for failure to pay fines for Class C misdemeanors, without a hearing, violates the Constitution; and (3) that the Defendants denied the Plaintiffs due process. They also ask the Court to declare whether the Defendants incarcerated the Plaintiffs under color of state law. The Texas Declaratory Judgments Act is a procedural and not a substantive provision and thus does not apply to actions in federal court. *Vera v. Bank of America, N.A.*, No. 13-10231, 569 F.App'x 349 (5th Cir., June 3, 2014), *citing Utica Lloyd's of Texas v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998).

In any case, the Plaintiffs do not allege and the record does not indicate that they have standing to seek a declaratory judgment. The Supreme Court has explained that to obtain equitable relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of immediate injury in the future; past exposure to illegal conduct does not itself show a present case or controversy regarding injunctive relief if unaccompanied by any continuing, present adverse effects. *Society of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992), *citing City of Los Angeles v. Lyons*, 461 U.S. 95, 101-02, 103 S.Ct. 1660, 1665 (1983). In *Lyons*, the Supreme Court held that an individual who had been subjected to a chokehold by police officers upon being stopped for a traffic violation lacked standing to obtain an injunction because it was entirely speculative that police officers would stop him again and choke him without provocation. Similar reasoning has been applied to lawsuits for declaratory judgments. *Society of Separationists*, 959 F.2d at 1285, *citing Ashcroft v. Mattis*, 431 U.S. 171, 172, 97 S.Ct. 1739, 1740 (1997) (*per curiam*).

In the same way, the Plaintiffs have not shown either continuing harm or a real and immediate threat of immediate injury in the future. As in *Lyons*, it is entirely speculative that either of the Plaintiffs will again have arrest warrants or capias pro fine warrants issued. They are not entitled to declaratory relief even apart from the fact that the statute upon which they rely, the Texas Declaratory Judgments Act, does not apply in federal court.

     E. The State Habeas Proceeding

Jeff Burks sought state habeas corpus relief and a hearing was held. The district court denied the habeas petition but granted a PR bond pending appeal, and Mr. Burks was released from jail on September 11, 2003.

On March 7, 2014, the Sixth Judicial District Court in Texarkana granted the application for habeas corpus relief and discharged Mr. Burks and his bond. *Ex Parte Burks,* slip op. no. 06-13-00217-CR, 2014 Tex.App. LEXIS 4507 (Tex.App.-Texarkana, April 25, 2014). The appellate court stated that Burks owes unpaid traffic fines in the City of Henderson Municipal Court in an amount

exceeding $5,000.00 but that he claims to be unable to pay them; the court went on state that Burks, "apparently without a hearing on his ability to pay, has been confined by authorities to lay out the fines," thus apparently requiring him to serve confinement time as a means of satisfying these fines.

After reciting the applicable law, the Court of Appeals stated that "the record strongly suggests that a written order does not exist, but that Burks has been confined based on an informal policy that automatically converts fines into jail time." The trial court in the state habeas proceeding did not make findings of fact, and the Court of Appeals observed that in such cases, an assumption exists that the trial court made implicit findings in support of its ruling, as long as such implied findings are supported by the record. In this case, however, the court stated that the record indicated that the trial court failed to hold a hearing on indigency and does not support any implied finding that a hearing was held. There was no mention made of the September 4 hearing, and in fact, the appellate court's opinion states that according to Burks' attorney, Burks requested a hearing on indigency and the city court refused to set one.[2] The Plaintiffs place great emphasis on the fact that Judge Turner did not make written findings following the September 4 hearing, as required by Tex. Code Crim. Pro. Art 45.046.

Neither Turner, Brown, Brack, or any other representative of the City of Henderson were parties to the habeas corpus proceeding or were notified to present any evidence. While Turner did not enter written findings following the September 4 hearing, this omission cannot be imputed to Rusk County or the City of Henderson. Nor does any purported violation of state law by the municipal judge provide any basis for a federal civil rights lawsuit. Mr. Burks had a constitutional right to due process, and he received this process in the form of the hearing held on the morning of September 4. The decision of the Court of Appeals states in footnote 12 that "our opinion should not be interpreted as being dispositive of any other related proceeding." The fact that Mr. Burks

---

[2]In his deposition, Burks does not mention requesting an indigency hearing or a refusal to set one.

received relief in the state habeas proceeding has no bearing on his claims against the Defendants in their official capacities, or against Rusk County or the City of Henderson.

Conclusion

On motions for summary judgment, the Court must examine the evidence and inferences drawn therefrom in the light most favorable to the non-moving party; after such examination, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Securities and Exchange Commission v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1994); *General Electric Capital Corp. v. Southeastern Health Care, Inc.*, 950 F.2d 944, 948 (5th Cir. 1992); Rule 56(c), Fed. R. Civ. P. Plaintiffs cannot oppose summary judgment by some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). This means that summary judgment is appropriate in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the non-movant. *Id.*

The pleadings and competent summary judgment evidence in this case show that there are no disputed issues of material fact and that the Defendants are entitled to judgment as a matter of law as to the claims against them in their official capacities. It is accordingly

ORDERED that the Defendants' motions for summary judgment as to the claims against them in their official capacities (docket no.'s 59 and 61) are GRANTED. It is further

ORDERED that the Plaintiffs' claims against the Defendants in their official capacities are DISMISSED with prejudice. Because the Plaintiffs' claims against the Defendants in their individual capacity have been previously dismissed, this order serves as the final disposition of the case. Finally, it is

ORDERED that any and all motions which may be pending in this cause are hereby DENIED.

So ORDERED and SIGNED this 10th day of June, 2015.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE